UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BARBARA M. DEPASQUALE d/b/a ) <br> HAVENS TOYS ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NAFTULA JACOBOWITZ a/k/a Nat Jacobs ) <br> a/k/a Matt Jacob, individually, on behalf of and ) <br> d/b/a Quality Encapsulations a/k/a Cure ) <br> Encapsulations, and/or Throop 57; and ) <br> THROOP 57, LLC; and SHAINDY ) <br> JACOBOWITZ a/k/a Sandy Jacobs, ) <br> individually and on behalf of and d/b/a Cure ) <br> Encapsulations a/k/a Quality Encapsulations; ) <br> and LISA MARTIN, individually and on behalf ) <br> of Quality Encapsulations, ) <br> ) <br> Defendants. ) <br> ) | CIVIL ACTION NO. <br> 3:16cv100 (JAM) <br><br><br><br><br><br><br><br><br><br><br> June 3, 2016 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS AMENDED COUNTERCLAIM AND FOR COSTS**

Pursuant to Fed. R. Civ. P. 12(b)(6), the plaintiff/counterclaim defendant, Barbara M. DePasquale d/b/a Havens Toys ("Plaintiff"), moves to dismiss the amended counterclaims[1] filed by the defendants/counterclaimants, Naftula Jacobowitz and Shaindy Jacobowitz (collectively, "Defendants"). Given that this is the second such motion Plaintiff has had to file, Plaintiff also seeks reimbursement for the costs associated with prosecuting this motion.

---

[1] It is unclear, based on the oral argument scheduled by the Court regarding Plaintiff's original motion to dismiss (doc. # 20) whether the amended counterclaims are the operative counterclaims in this case. Plaintiff files this motion without conceding that the amended counterclaims are operative, in an abundance of caution to avoid missing a potential response deadline.

Defendants' counterclaims – like their conduct that started this dispute – continue to be based on a misunderstanding of trademark law. They seemingly continue to believe that they are the only ones permitted to sell a product known as "Garcinia Cambogia," and that anyone who *resells* that product (at a *higher* price) – even if that seller obtained it directly from Defendants themselves – commits trademark infringement (or engages in unfair competition or unfair trade practices). That misunderstanding has led to: (1) Defendants' flawed cease and desist correspondence to Plaintiff, (2) Defendants' false reviews and/or feedback posted online, (3) this litigation, and now (4) Defendants' counterclaims. Defendants have not alleged any "use" of any "Mark" owned by Defendants – let alone any infringing use supported by amplified factual allegations necessary to render the claim *plausible*. Indeed, for the first time, Defendants attach the purported trademark registration at issue (it was not attached to their original counterclaim), which makes clear that *neither* Defendant is the owner of the purported trademark, and thus Defendants have no standing to pursue a trademark infringement claim. Even if they had standing, their claims are barred by the First Sale Doctrine. Plaintiff therefore moves that the counterclaims be dismissed **with prejudice**.

I.   **BACKGROUND/FACTS**

On May 13, 2016, Defendants filed an "Amended Answer[, Affirmative Defenses] and Counterclaims," in which Defendants responded to Plaintiff's Complaint, pleaded certain "Factual Allegations Underlying Affirmative Defenses and Counterclaims," and asserted four new counterclaims[2] alleging "15 USC §1125," "15 USC § 1114," "Common

---

[2] In their original Answer, Defendants asserted a single counterclaim alleging Dilution. In response to

Law Unfair Competition," and "Connecticut Unfair Trade Practices Act (CUTPA)" (collectively, the "Counterclaims"). (Doc. # 27.) In the Facts section of the Counterclaims, Defendants allege:

- Defendants (specifically "one or more of … Defendants") are the "manufacturer, distributor and/or seller of Garcinia Cambogia." (Counterclaims, p. 5 at ¶ 32.) They do not specify which Defendant or whether such Defendant(s) is/are the manufacturer, distributor or seller.

- Plaintiff has offered to sell Garcinia Cambogia. (*Id.* at p. 9, ¶¶ 43-44.)

- Plaintiff's listed sale price for Garcinia Cambogia was higher than Defendants' sale price – specifically, Defendants offered to sell for $20, and Plaintiff offered to sell for $40. (*Id.* at ¶ 43.)

- When orders were placed with Plaintiff, Plaintiff (herself and/or through others) sought to fulfill those orders by obtaining Garcinia Cambogia from Defendants to sell to Plaintiff's customers.[3] (*E.g., id.* at pp. 9-10, ¶¶ 44, 47.)

- Although many of Defendants' specific allegations relate to Plaintiff's alleged dependence on Defendants for the product she offers, Defendants also offer the conclusory allegation that Plaintiff's business was "created

---

Plaintiff's motion to dismiss, Defendants have removed that claim.

[3] The process employed by Plaintiff, on which most or all of Defendants' Counterclaims are based, is commonly known as "drop shipping." *See, e.g.,* https://en.wikipedia.org/wiki/Drop_shipping ("Drop shipping is a supply chain management technique in which the retailer does not keep goods in stock but instead transfers customer orders and shipment details to either the manufacturer, another retailer, or a wholesaler, who then ships the goods directly to the customer. As in retail businesses, the majority of retailers make their profit on the difference between the wholesale and retail price…").

for the sole purpose of disrupting the business of Answering Defendants." (*Compare id.*, pp. 9-10, ¶¶ 42-44, 47 *with* ¶ 42.)

- Defendants also quote a warning that Plaintiff includes in her emails to customers to discourage mail/customer fraud, which refers to "an invisible mark on all of [Plaintiff's] product packaging"; Defendants claim this email warning "subject[s Plaintiff] to liability," but they do not allege how, or how Defendants are injured by such emails to customers.

Although Defendants allege certain other conduct, all of Defendants claims are anchored upon Plaintiff's alleged drop shipping business, in which Plaintiff offered and sold a product – Garcinia Cambogia – of which one or both of the Defendants is a "manufacturer, distributor and/or seller," thus allegedly damaging Defendants' "Mark." However, Defendants' own exhibit proves that neither Defendant owns the "Mark" alleged in the Counterclaims. Even if they did, neither trademark law nor any other law prohibits Plaintiff from offering to resell a product Plaintiff obtained from Defendants, at a price higher than the Defendants charge.

## II. STANDARD OF REVIEW

A party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In addressing such a motion, the court is to "accept the material facts alleged in the complaint as true and construe all reasonable inferences in the [alleging party's] favor." *Phelps v. Kapnolas* 308 F.3d 180, 184 (2d Cir. 2002). Bald assertions and mere conclusions of law do not suffice to meet the alleging party's pleading obligations. *See Amron v. Morgan Stanley Inv. Advisors Inc.* 464 F. 3rd 338, 344 (2d Cir. 2006). Instead, the alleging party is obliged to "amplify a

claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty* 490 F. 3d 143, 157-58 (2d Cir. 2007), *rev'd on other grounds sub. nom. Ashcroft v. Iqbal,* 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Iqbal,* 129 S. Ct. at 1949 (complaint/counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" (citing *Bell Atl. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Rule 8(a) requires factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Boykin v. Key Corp.* 521 F. 3d 202, 213-14 (2d Cir. 2008) (quoting *Twombly*, 550 U.S. 544 (2007)).  The "plausibility standard" in *Twombly* "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*).

> A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations…  It assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it.  In deciding a Rule 12(b)(6) motion, a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference…  The court may also consider matters of which judicial notice may be taken and documents of which plaintiff had knowledge and relied on in bringing suit…  The court then accepts the allegations contained in the complaint as true and draws all reasonable inferences in favor of the nonmoving party, … unless the allegations are supported by mere conclusory statements.

*Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 264 (D. Conn. 2010) (citations and internal quotations omitted).

> Under Fed. R. Civ. P. 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it... It is generally the plaintiff's burden to prove by a preponderance of the evidence that such jurisdiction exists… When subject matter jurisdiction is challenged under Rule 12(b)(1), both the movant and the pleader may use affidavits and other pleading materials to support and oppose such motions, without converting the motion to one for summary judgment…

5

*Id.* at 264-65 (citations and internal quotations omitted).

> A motion to dismiss for lack of standing is properly brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, because standing is a federal jurisdictional question… A plaintiff must allege clear facts demonstrating that they are the proper party to invoke judicial resolution of the dispute… Courts evaluating Rule 12(b)(1) motions may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits…

*McFarlane v. Roberta*, 891 F. Supp. 2d 275, 282 (D. Conn. 2012) (citations and internal quotations omitted).

### III. ARGUMENT

There are two simple reasons the Court should dismiss the Counterclaims with prejudice: (A) Defendants allege no use of any trademark owned by Defendants; and (B) Defendants' claims, apparently related to a third party's trademark, allege conduct permitted and protected by the First Sale Doctrine, not actionable under any of Defendants' Counterclaims.

#### a. No alleged "use" of any "Mark" owned by Defendants

The "Mark" at issue in Defendants' Counterclaims is "a trademark to the logo, 'Quality Encapsulations' (the 'Mark', *see* annexed copy), which they place on Garcinia Cambogia QE …." (Counterclaims, p. 5 at ¶ 33.)  The "annexed copy" that Defendants attach and incorporate into their Counterclaims reveals that the "Quality Encapsulations" logo (for which the words "Quality Encapsulations" are disclaimed) is owned by the original registrant of that trademark, "Cure Encapsulations CORPORATION" (for purposes of this memorandum, "CEC").  CEC is not a party to this case.  Defendants do not allege that the Mark has been assigned to either or both of the Defendants.  Indeed,

the annexed copy of the registration, incorporated into the Counterclaims, reveals no assignment on file with the U.S. Patent and Trademark Office.

Defendants' Second Counterclaim asserts a violation of 15 U.S.C. § 1114.  This cause of action "is available, however, only to 'registrant[s]' of the trademark[ ] at issue, a term the Act defines as embracing the actual registrant's 'legal representatives, predecessors, successors and assigns.'" *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 72 (7th Cir. Wis. 2013) (quoting 15 U.S.C. § 1127).  In other words, only trademark "registrants — as statutorily defined — have 'statutory standing' to bring an action under [§ 1114]." *Id.*  The registrant, according to Defendants' own exhibit, incorporated into the Counterclaims, is CEC.  Defendants have no standing and no legally sufficient cause of action under § 1114.  As such, Defendants' Second Counterclaim alleging a violation of 15 U.S.C. § 1114 must be dismissed pursuant to Rule 12(b)(1) and/or 12(b)(6).

Defendants also allege a violation of § 1125.  Theoretically, such claims may be brought "by any person who believes that he or she is or is likely to be damaged" by the alleged actions.  *Id.* (citing 15 U.S.C. § 1125(a)(1)).  However, there is nothing in Defendants' Counterclaims from which the Court may reasonably infer that Defendants intended any distinction between Defendants and CEC, based on the type or nature of damages allegedly being suffered.  Rather, it seems that Defendants simply assumed that they could bring claims on behalf of CEC, which is not the case.  As noted, Defendants plead amorphously that "one or more of … Defendants" (without specifying which) are the "manufacturer, distributor and/or seller of Garcinia Cambogia" (again, without specifying which).  (Counterclaims, p. 5 at ¶ 32.) Based on these assertions,

Defendants fail to satisfy *Iqbal* and *Twombly*, in that they fail to allege amplified factual allegations needed to demonstrate the plausibility of the (implied) claim that they somehow suffered damages distinct from the trademark owner such that they have a valid claim under 15 U.S.C. § 1125. (*See, supra,* Section II.)  Even if one or both of Defendants manufacture, distribute, or sell Garcinia Cambogia, that does not entitle either or both of them to prevent Plaintiff from re-selling that same product.  In short, there are no allegations that demonstrate the plausibility of any injury that would allow Defendants – who are *not* the owners of the Mark – to sue Plaintiff under § 1125 of the Lanham Act for merely offering to resell a product that they also sell.  Therefore, Defendants fail to state a claim upon which relief may be granted, and their First Counterclaim must be dismissed pursuant to Rules 12(b)(1) (standing) and/or 12(b)(6) (failure to state a claim).

The Third and Fourth Counterclaims each rely on the same set of facts, and the same trademark registration incorporated therein.  (See Counterclaims, p. 15 at ¶¶ 43, 49.)  Other than the reincorporated facts, both Counterclaims merely recite the elements of the claims they purport to assert.  Nothing in those Counterclaims suggests that they are based on anything other than the alleged "Mark" (owned by CEC). For example, the Third Counterclaim simply relies on the common law counterpart to the Lanham Act, in that it is based on alleged "confusion, mistake, and/or uncertainty among customers, end users and the public." (*Id.* at ¶ 46.)  In short, there is no factual allegation – and certainly no amplified factual allegations – that would support causes of action based on

***CEC's*** "Mark."[4]  As such, for the same reasons as stated above with respect to the First and Second Counterclaims, the Third and Fourth Counterclaims should be dismissed.

### b. First Sale Doctrine

Even if CEC were a party, there would still be no legal basis for the Counterclaims, as they are currently alleged.[5]  As noted, each of the Counterclaims incorporates the same set of facts, which is based primarily on two things: (1) the registration of the "Mark"; and (2) Plaintiff's business of offering and drop shipping the same product that Defendants sell bearing the "Mark."  Even if Defendants had standing to sue on the Mark, there is still no legal claim based on Plaintiff's reselling of a product she purchased from Defendants.  Such conduct is protected by the First Sale Doctrine. Under the First Sale Doctrine:

> the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product….Therefore, a reseller of branded goods-who does not materially change the goods-is not a trademark infringer… The rationale for the rule is that trademark law is designed to prevent sellers from confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold… Given the first sale doctrine's relationship to the likelihood of confusion, it is appropriate to raise the doctrine in a Rule 12(b)(6) motion to dismiss...

*Stevo Design, Inc. v. SBR Mktg.*, 919 F. Supp. 2d 1112, 1121-22 (D. Nev. 2013) (citations and internal quotations omitted).

---

[4] Plaintiff recognizes that Defendants allege other facts related to alleged posts and/or reviews.  Most of those allegations are untrue and could never be substantiated, but Plaintiff recognizes that such argument is not within the purview of a motion to dismiss.  However, given that those allegations are inextricably intertwined with the Counterclaims as a whole, all of which rely on the alleged infringement of a "Mark" (logo) that Defendants do not own, as well as a theory that violates the First Sale Doctrine, Plaintiff submits that *Iqbal* and *Twombly* require dismissal of the Counterclaims as a whole.

[5] Again, based on the parties to and status of this litigation, Plaintiff takes no position regarding whether Defendants might be able to fashion a viable claim were they to remove the legally insufficient allegations.

Defendants' Counterclaims are based on Plaintiff's drop shipping business. (Counterclaims, pp. 8-10, at ¶¶ 41, 43-47.)  Notably, Defendants rely on the alleged "Amazon[ ] Drop Shipping Policy" in support of their claims.  (*See, e.g., id.* at ¶ 45.) They allege that Plaintiff (herself or through others) offered Garcinia Cambogia online (e.g., ¶ 43) and then, when orders were placed by customers, she purchased the product from Defendant Mr. Jacobowitz, through his online seller name, "Quality Life Essentials,"[6] and then sold that product to Defendants, arranging for the product to be shipped from Defendant to Defendants. The factual circumstances described by Defendants do not rise to the level of any plausible, legally sufficient cause of action.

First, even if Defendants were correct that Amazon prohibits drop shipping (which Plaintiff does not concede), there is no recognized civil cause of action for violating Amazon seller guidelines.  Even if there were, Defendants have not pleaded such a claim with the necessary amplified allegations.  Second, Defendants' Counterclaim, read as a whole, demonstrates what in fact happened – that Plaintiff purchased a product from Defendants, and offered to sell that product to buyers (one or more of which was, in fact, Defendants, investigating what they (incorrectly) believed was the wrongful resale of products they believe they have the exclusive right to sell).

---

[6] Although Defendants use the phrase "another online retailer" (Counterclaims, p. 10 at ¶ 47), it appears that Defendants may have intended to write "another online account of Defendants" (or something to that effect).  "Quality Encapsulations" and "Quality Life Essentials" generally share the same presence/space online, and are used as alternating trade or user names for the same seller. (*See, e.g.,* Exhibit A (Facebook "About" page of "Quality Encapsulations," stating "Welcome to the home of Quality Encapsulations and Quality Life Essentials…").)  (Putting aside the truth of that "Welcome" statement specifically, the Court may take judicial notice of the fact that this statement is made/published, and Plaintiff is not suggesting that anything else is required in order to correctly interpret the ambiguous phrase in Defendants' Counterclaims.)  In other words, it does not appear that Defendants were suggesting to the Court that "Quality Life Essentials" is an unrelated entity.  Of course, the fact that Defendants have all of the details of both the purchases/attempted purchases by Plaintiff *from* Defendants, and the sales/offers by Plaintiff *to* Defendants, demonstrates that Defendants were both the seller(s) and the buyer(s), and that the product about which Defendants complain, derived from Defendants.

Defendants' Counterclaims allege the mere resale of branded goods -- the very elements of the First Sale Doctrine. *Stevo Design,* 919 F. Supp. 2d at 1121-22 ("a reseller of branded goods-who does not materially change the goods-is not a trademark infringer…").  Defendants do not allege that Plaintiff "materially change[d]" the Garcinia Cambogia. In fact, Defendants allege that Plaintiff arranged to have them drop shipped *from* Defendants *to* Defendants, and thus there would not even be an opportunity to "materially change" them.  As such, the First Sale Doctrine bars Defendants' first three (3) Counterclaims.  *Id.   See also Sebastian Int'l, Inc. v. Longs Drug Stores Corp.,* 53 F.3d 1073, 1074 (9th Cir. Cal. 1995) ("Resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition").  Similarly, Defendants have not sufficiently pleaded how the federal law that expressly permits "[r]esale by the first purchase of the original article under the producer's trademark" is "offensive to public policy" as required by CUTPA.  As such, Defendants' fourth counterclaim should be dismissed as well.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff moves that Defendants' Counterclaims be dismissed, and given that this is the second such motion Plaintiff has had to file, that costs be awarded to Plaintiff.[7]

THE PLAINTIFF/COUNTERCLAIM
DEFENDANT
BARBARA M. DEPASQUALE d/b/a
HAVENS TOYS


By: _____/s/_____
Brian C. Roche – ct 17975
Gerald C. Pia, Jr. – ct 21296
Roche Pia, LLC
Two Corporate Drive, Suite 248
Shelton, CT06484
Phone: (203) 944-0235
Fax: (203) 567-8033
E-mail: broche@rochepia.com
gpia@rochepia.com

---

[7] If the Court grants the aspect of this motion seeking an award of costs, Plaintiff will submit for the Court's consideration an affidavit and/or billing records in support of the precise amount.

**<u>CERTIFICATION</u>**

I hereby certify that, on the date hereon, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/_____
Gerald C. Pia    (ct 21296)
Brian C. Roche (ct 17975)